# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| HAROLD JAMES HOBLICK and MIRIAM HOBLICK, | ) ) ) | |
| Plaintiffs, | ) ) | No. 2:19-cv-01829-DCN |
| vs. | ) ) ) | **ORDER** |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) ) ) | |

The following matter is before the court on defendant United States of America's motion to dismiss and alternative motion for summary judgment, ECF No. 28. For the reasons set forth below, the court grants the motion to dismiss and finds as moot the alternative motion for summary judgment.

## I. BACKGROUND

Plaintiff Harold James Hoblick ("Hoblick") was employed as a maritime facility security guard at the Detyens Shipyards in North Charleston, South Carolina. At all relevant times, the USNS Maury (T-AGCS-66) (the "Maury") was drydocked at the Detyens Shipyards. The Maury is a public vessel of the United States Government, specifically an oceanographic survey ship administered by the Military Sealift Command, which is part of the United States Navy. On July 3, 2017, Hoblick allegedly observed a Maury crewmember, Travis T. Rose ("Rose"), park an unauthorized personal vehicle on the pier and proceed down the gangway onto the deck of the Maury. Although not invited or otherwise permitted onboard, Hoblick followed Rose onto the deck of the Maury to request that Rose move his parked vehicle. The parties dispute the specifics of

1

this encounter. According to Rose, Hoblick used racially offensive language in confronting Rose about his parked vehicle, and Hoblick tripped while stepping backwards away from Rose. Hoblick, conversely, alleges that Rose "beat Hoblick like a drum" based on Rose's perception that Hoblick was discriminately enforcing parking regulations based on Rose's race. Hoblick alleges serious and permanent injuries as a result of the encounter.

On June 27, 2019, Hoblick and his wife, plaintiff Miriam Hoblick (collectively, the "Hoblicks"), filed the instant action against the United States, alleging negligence in hiring, retaining, and failing to supervise and train Rose, as well as loss of consortium. ECF No. 1, Compl. On January 21, 2021, the government filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(h)(3) for lack of subject matter jurisdiction and an alternative motion for summary judgment. ECF No. 28. On February 10, 2021, the Hoblicks responded in opposition, ECF No. 34, and, on February 17, 2021, the government replied, ECF No. 43. As such, this motion has been fully briefed and is now ripe for review.

## II.  STANDARD

### A.  Motion to Dismiss Under Rule 12(b)(1) and Rule 12(h)(3)

A motion to dismiss under Rule 12(b)(1) represents a challenge to the court's subject matter jurisdiction. Arbaugh v. Y & H Corp., 546 U.S. 500, 507 (2006). Pursuant to Rule 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Lack of subject-matter jurisdiction may be raised at any time by a party or the court. See Arbaugh, 546 U.S. at 506-507. "When a Rule 12(b)(1) motion challenge is raised to the

factual basis for subject matter jurisdiction, the burden of proving subject matter jurisdiction is on the plaintiff." Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). In deciding such a motion, "the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." In re KBR, Inc., Burn Pit Litig., 744 F.3d 326, 333 (4th Cir. 2014) (internal quotation marks omitted). When determining whether subject matter jurisdiction is present, the court applies the standard applicable to motions for summary judgment where the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists. Richmond, 945 F.2d at 768 (citing Trentacosta v. Frontier Pacific Aircraft Indus., 813 F.2d 1553, 1559 (9th Cir. 1987)). "The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id.

### B. Summary Judgment

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary

3

judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

### III.   DISCUSSION

The parties dispute whether the instant action falls within this court's admiralty jurisdiction such that certain waivers of sovereign immunity by the United States apply. The court first summarizes the relevant law regarding admiralty jurisdiction and then considers the parties' arguments regarding the same.

The United States is immune from suit unless it has waived its sovereign immunity, thereby consenting to be sued. See, e.g., United States v. Thompson, 98 U.S. 486, 489 (1878). Absent an express waiver of sovereign immunity, federal courts lack subject-matter jurisdiction over suits against the United States. United States v. Sherwood, 312 U.S. 584, 586 (1941). In cases of admiralty tort claims against the United States, the United States has waived its sovereign immunity under the Suits in Admiralty Act, 46 U.S.C. § 30901 et seq. (the "SAA") and the Public Vessels Act 46 U.S.C. § 31101 et seq. (the "PVA"). The SAA permits suits against the United States where, "if a vessel were privately owned or operated, or if cargo were privately owned or possessed, or if a private person or property were involved, a civil action in admiralty could be maintained." 46 U.S.C. § 30903. The PVA allows personal civil admiralty actions against the United States for "damages caused by a public vessel of the United States."

46 U.S.C. § 31102(a)(1).[1]  Both waivers of sovereign immunity apply exclusively in civil admiralty cases.

A federal court's authority to hear cases in admiralty flows initially from the Constitution which "extend[s]" federal judicial power "to all Cases of admiralty and maritime Jurisdiction."  U.S. CONST. Art. III, § 2.  Congress has embodied that power in a statute giving federal district courts "original jurisdiction . . . of . . . [a]ny civil case of admiralty or maritime jurisdiction . . . ."  28 U.S.C. § 1333(1).  A party seeking to invoke federal admiralty jurisdiction over a tort claim pursuant to 28 U.S.C. § 1333(1) must satisfy conditions both of location and of connection with maritime activity.  Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995) (citing Sisson v. Ruby, 497 U.S. 358 (1990)).  For a party to satisfy the location test, the court must determine "whether the tort occurred on navigable water or whether the injury suffered on land was caused by a vessel on navigable water."  Id. (citing the Extension of Admiralty Jurisdiction Act, 46 U.S.C.S. § 30101(a)).  Thereafter, the connection test requires the court to assess two additional sub-issues.  First, the court must determine whether the general features of the type of incident involved have a "potentially disruptive impact on maritime commerce."  Id. (quoting Sisson, 497 U.S. at 364 n. 2).  Second, the court should decide whether the general nature of the activity that caused the incident shows a "substantial relationship to traditional maritime activity.  Id. (quoting Sisson, 497 U.S. at 364).

---

[1] It appears to the court that the PVA would not apply to the instant action because the Hoblicks do not allege any damages caused by the Maury itself.  However, the parties do not present arguments regarding the same, and because the court resolves the motion on other grounds, the court likewise does not address this issue.

The Hoblicks assert that this action against the United States falls within the scope of the court's federal admiralty tort jurisdiction under 28 U.S.C. § 1333(1).  As such, the Hoblicks argue that the SAA and PVA waivers of sovereign immunity apply.  The government moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(h)(3) for lack of subject matter jurisdiction.  The government concedes that the location test for admiralty jurisdiction "is likely present in the facts at bar."  ECF No. 28-1 at 10.  However, the government argues that the Hoblicks' claims do not satisfy the connection test.  As such, the government argues that the sovereign immunity waivers under the SAA and PVA do not apply and that sovereign immunity prevents the court's exercise of jurisdiction over this action.

The government maintains that, under the first prong of the connection test, the general features of the incident in question do not have a "potentially disruptive impact on maritime commerce."  ECF No. 28-1 at 11 (citing Grubart, 513 U.S. at 440).  To determine whether the first prong of the connection test is satisfied, the court must first determine "a description of the incident at an intermediate level of possible generality."  Grubart, 513 U.S. at 538.  The first prong considers "potential effects, not to the particular facts of the incident."  Id. (internal citation omitted).  The description should be general enough to capture the possible effects of similar incidents on maritime commerce, but specific enough to exclude irrelevant cases.

The government characterizes the incident as "an after-hours injury to a landside worker inappropriately on the deck of a drydocked vessel during a dispute over shoreside parking."  ECF No. 28-1 at 11.  The Hoblicks, on the other hand, characterize the incident as including Rose's parking violation, and by extension his failure to uphold

6

required fire prevention and fire safety standards of the Maury and the shipyard; Rose's failure to properly identify himself to Hoblick; and the failures of both Rose and the government to maintain a safe and non-violent vessel.  ECF No. 34 at 5.  The court rejects both the government's and the Hoblicks' characterizations.  The government's characterization is too specific to the facts of the case "to capture the possible effects of similar incidents on maritime commerce."  In re Petition of Germain, 824 F.3d 258, 272 (2d Cir. 2016).  The Hoblicks' characterization of the incident, on the other hand, is overly broad and fails to "focus[] on the direct and immediate cause of the injuries suffered, rather than the alleged negligence underlying the suit."  Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 249 (2d Cir. 2014) (citing Grubart, 513 U.S. at 538–39 (characterizing the incident as "damage by a vessel in navigable water to an underwater structure"); Sisson, 497 U.S. at 362–63 (characterizing the incident as "a fire on a vessel docked at a marina on navigable waters")).

        Instead, the court finds that the incident at issue is best described as an assault and battery of a non-invited person on a drydocked ship.  See id. (characterizing the incident as "a physical altercation among recreational visitors on and around a permanent dock surrounded by navigable water").  This description is general enough to capture similar incidents, yet specific enough to exclude irrelevant cases.  It also takes into account the general location of the incident and the role of the affected person, both of which are relevant to the potential effect on maritime commerce.  See Sisson, 497 U.S. at 363 (including in its description the general location of the fire); Vasquez, 582 F.3d at 300 (describing the type of incident as "the death of persons repairing and refitting a vessel " (emphasis added)).

Accordingly, the court must determine whether this type of incident is "likely to disrupt [maritime] commercial activity." Id. (quoting Sisson, 497 U.S. at 363). In so doing, the court looks not to whether maritime commerce was actually disrupted here, but to whether similar occurrences are likely to be disruptive. The overall purpose of the exercise is to determine "whether the incident could be seen within a class of incidents that pose[ ] more than a fanciful risk to commercial shipping." Id. at 539. The court finds that the incident, as characterized by the court, does not have the potential to disrupt maritime activity. An assault and battery on a drydocked vessel cannot immediately disrupt navigation like a sinking plane, Executive Jet, 409 U.S. at 270; a collision between vessels, Foremost Ins. Co. v. Richardson, 457 U.S. 668, 675 (1982); or a collision between a vessel and an underwater structure, Grubart, 513 U.S. at 542. It cannot lead to a person falling into the waterway, thus requiring rescue efforts or assistance by commercial vessels on navigable waters. See In the Matter of Complaint of Alisa Morrow as Owner of the 1996 Cruisers 36' Motoryacht Lola Babe (HIN: CRSUSH01D696) for Exoneration From or Limitation of Liab., 2018 WL 826514, at *3 (D. Md. Feb. 12, 2018). It also could not immediately damage nearby commercial vessels like, for example, a fire on a vessel docked at a marina. See Sisson, 497 U.S. at 362–63; Tandon, 752 F.3d at 249–50 ("[A] fight is unlikely to spread the entire length of a dock, as a fire would, and, therefore, there is little risk that a fight would make the marina inaccessible or impact other boats."). Likewise, an assault and battery on a drydocked vessel does not pose the same risks to maritime commerce as it might on a vessel on navigable water. See Endrody v. M/Y ANOMALY, 2006 WL 8454761, at *3 (W.D. Wash. Feb. 7, 2006) ("Since the ANOMALY was secured to the dock by its stern

line before the exchange, the potential effects of the assault and battery were limited in scope"). It could not, for instance, distract the crew from their duties, risking collision with others on the waterway or diversion from course for medical attention for the injured party. Additionally, because the assault and battery is directed at a non-invited person on the vessel, it does not have the potential to stall or delay the activity of the vessel in the same way that injury to a repairman or crewmember might.[2] Cases giving rise to federal maritime jurisdiction must implicate the underlying federal interest in federal maritime jurisdiction—the protection of maritime commerce. Sisson, 497 U.S. at 364 n. 2. Based on the above analysis, the instant case fails to do so and thus fails to satisfy the first prong of the connection test.

Because the court has found that the Hoblicks fail to satisfy the first prong of the connection test, the court need not analyze the second prong—whether the general character of the activities giving rise to the incident have a substantial relationship to traditional maritime activity. The court finds federal admiralty jurisdiction lacking pursuant to 28 U.S.C. § 1333(1). The SAA and PVA only waive the United States' sovereign immunity with respect to admiralty actions, and, accordingly, the Hoblicks' claims against the United States under the SAA and PVA fail. The Hoblicks do not assert in their complaint or argue in their motion that this court otherwise has jurisdiction over the action or that any other waiver of sovereign immunity applies. Therefore, the

---

[2] To the extent the person who commits the assault and battery may be injured in so doing, the court finds this possibility presents no more than a fanciful risk to commercial shipping. While it is possible to speculate that an assault and battery of a non-invited person may escalate to a physical altercation whereby a crewmember or repairman is also injured, and that activities of the vessel are thereby delayed, such speculation is too far removed from the general features of the incident in question.

9

court finds that the United States has not waived its sovereign immunity in the instant action. Accordingly, the court lacks subject matter jurisdiction, and the Hoblicks' claims must be dismissed.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion dismiss and **FINDS AS MOOT** the government's alternative motion for summary judgment.

**AND IT IS SO ORDERED.**

                                                                    _____
                                                                    **DAVID C. NORTON**
                                                                    **UNITED STATES DISTRICT JUDGE**

**March 16, 2021**
**Charleston, South Carolina**